NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD A. and PATRICIA MARSELLA, individually and as p/n/g of RICHARD J. MARSELLA, <br><br>                 Plaintiffs, <br><br>      v. <br><br> AMERICAN AIRLINES, UNITED HEALTHCARE INSURANCE CO, INC., PENSION BENEFITS ADMINISTRATION COMMITTEE AT AMERICAN AIRLINES, AMERICAN AIRLINES' GROUP LIFE & HEALTH BENEFITS PLAN FOR EMPLOYEES OF PARTICIPATING AMR CORP. SUBSIDIARIES, AND JOHN DOES 1-10, <br><br>                 Defendants. | Civil Action No. 10-cv-01454 (SDW) <br><br><br><br> **OPINION** <br><br><br><br> October 20, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendants' American Airlines Inc., American Airlines' Pension Benefits Administration Committee, and American Airlines' Group Life & Health Benefits Plan for Employees of Participating AMR Corporate Subsidiaries ("Plan") (collectively "American Airlines" or "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Also before this Court is Plaintiffs' Motion for Leave to File a Rebuttal Memorandum. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Leave to File a Rebuttal Memorandum.

## I.      BACKGROUND

This matter involves Richard A. Marsella and Patricia Marsella, individually and as p/n/g of Richard J. Marsella (collectively "Plaintiffs") and American Airlines, Inc., United Healthcare Insurance Co., Inc. ("UHIC"), Pension Benefits Administration Committee at American Airlines ("PBAC"), American Airlines' Group Life & Health Benefits Plan for Employees of Participating AMR Corp. Subsidiaries, and John Does 1-10.

Plaintiff Richard J. Marsella ("R.J.") has spastic quadriplegic pattern cerebral palsy and kypohoscoliosis.  He is also blind and mentally retarded.  (Defs.' Br. Ex. A, Administrative Record ("AR") at AA-000096.)  On or about November 30, 2008, the Plan became R.J.'s primary insurer.[1]  (Am. Compl. ¶ 21.)  On or about December 9, 2008, UHIC denied Plaintiffs' claim for coverage of nursing home care specialists.  (AR at AA-000220.)  Plaintiffs appealed the decision twice through UHIC, and once more through the PBAC.  Plaintiffs filed this action seeking compensatory damages, an injunction requiring payment of Plaintiffs' past and future claims for in-home skilled nursing services for R.J., attorneys' fees and other further appropriate equitable relief.  (Am. Compl. ¶ 49.)

The issue before the Court involves a claim for benefits under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (2006), as it pertains to coverage of R. J.'s home care specialists.  The parties' dispute centers around (1) whether the care rendered to R.J. requires care that must be performed by an appropriately skilled nurse, or (2) whether the care provided to R.J. should be characterized as medically necessary treatment or custodial in nature.

---

[1] Previously, the Plan provided secondary medical coverage.  The Plan became the primary insurer after Aetna discontinued coverage for R.J.  (Am. Compl. ¶ 21.)

## III.    FACTS

Patricia Marsella is a flight attendant for American Airlines, and she is insured under American Airlines' Group Life & Health Benefits Plan for Employees of Participating AMR Corp. Subsidiaries .  (Am. Compl. ¶¶ 11, 14-15.)  UHIC is the Plan's claims administrator.  (Am. Compl. ¶¶ 9, 14.)  Her adult son, R.J., has spastic quadriplegic pattern palsy and kyphoscoliosis. (AR at AA-000096.)  He is also blind and mentally retarded.  (*Id.*)  As a result of his conditions, R.J. has no head or trunk control.  (AR at AA-00091, 240.)  He is unable to walk, wash, dress, or feed himself.  (*Id.*)  Since he is Mrs. Marsella's incapacitated dependent, Mrs. Marsella designated R.J. as a beneficiary under the Plan.  (Am. Compl. ¶¶ 7, 16.)

By facsimile dated November 26, 2008, R.J's treating physician, Arthur H. Schultes, D.O., stated that due to R.J.'s disabilities and incapacitation, he requires daily G-J tube stoma care[2], range of motion exercises, frequent diaper changes, repositioning, feeding through G-J tube and administration of medicine through tube, monitoring, and chest physiotherapy twice a day to mobilize the mucus in his lungs[3].  (AR at AA-000148-50.)  Dr. Schultes also stated:

> [R.J.]'s complex problems and care require more than "normal" custodial care and he would be at greater risk for complications if inexperienced, non-medically trained individuals were given the responsibilities outlined above.  I believe that any reduction in [R.J.]'s current nursing care would lead to increased complications and hospital admissions with their associated costs.  I feel that to continue [R.J.]'s current hours of nursing care will keep him safe, healthy and happy in his home.

*Id.*

---

[2] Gastro-Jejunostomy ("G-J") tubes are devices that are surgically inserted through the abdomen.  They are used to provide nutrition (generally through liquid formulas) from an external source (such as a feeding bag).  The "stoma" is the surgical opening through which the device is inserted.  (AR at AA-000096, 91.)
[3] Chest physiotherapy removes mucus from lungs by various techniques, such as postural drainage, where the body is positioned so that gravity will bring the mucus into the throat, and percussion, which involves patting the chest to vibrate the lungs and help the secretions move.

As Mrs. Marsella was unable to provide care to her adult son for medical reasons, and since Mr. Richard A. Marsella ("Mr. Marsella") worked ten to twelve hours per day, Plaintiffs requested in-home nursing services from Bayada Nurses Home Care Specialists ("Bayada") for overnight hours.[4]  (AR at AA-000094.)  On or about November 26, 2008, a Bayada representative requested that UHIC, the claims administrator, pre-approve twelve and a half hours of skilled nursing care, seven days a week for R.J.  (AR at AA-000207.)

UHIC assigned the claim for review to Sherry Blakney-Johnson, LPN.  She believed the care might be excluded from coverage based on language in the Plan and in the UHIC technical assessment bulletin on "Skilled Care Services."[5]  (AR at AA-000213.)  According to the Plan, in-home "custodial care and custodial items" are excluded from coverage.  (AR at AA-000423, 428.)  This includes care which is meant to assist a "person in the normal activities of daily living and does not provide any therapeutic value in the treatment of an illness or injury."  (AR at AA-000564.)  The Plan also excludes

> care, treatment and services, or supplies received from a nurse that do not require the skill and training of a nurse; private duty care that is not medically necessary, or if medical records establish that such care is within the scope of care normally furnished by hospital floor nurses; certified nurses aides.

(AR at AA-000425, 428.)

---

[4] The services required included "total care for bathing, dressing, suctioning, respiratory treatements, g/j tube medication administration and feedings, transfers by hoyer lift, monitor vital signs, systems assessment, stringent safety precautions and frequent repositioning."  (AR at AA-000094.)

[5] The bulletin states:

> A healthcare service is determined to be skilled based on whether or not clinical training is necessary for the service to be delivered safely and effectively and on the need for physician-directed medical care. . . . The absence of a caregiver to perform a service does not cause an otherwise custodial service to become skilled.

(AR at AA-000142-144.)  Furthermore, range of motion exercises, respiratory therapy, nutrition, medication administration, skin care, and turning or positioning, as well as assistance with activities of daily living (ADL) including bathing, dressing, toilet, transfer, continence and feeding are not covered.  *Id.*

Furthermore, the Plan states:

> The [PBAC], under the authority granted to it by the Board of Directors through the Chairman, has the sole authority to interpret, construe, determine claims and adopt and/or amend employee benefit plans. . . . The Employer hereby grants the PBAC the authority to administer and interpret the terms and conditions of the Plans and the applicable legal requirements related thereto.

(AR at AA-000537.)

As Blakney-Johnson was unsure whether the claim was truly excluded, it was sent to Dr. Samuel Wilmit, M.D. for further review.  (AR at AA-000213.)  Dr. Wilmit discussed the beneficiary's home care needs with R.J.'s primary physician, Dr. Schultes.  Dr. Wilmit pointed out that stoma care and J-tube feeding were custodial care and that the requested services did not require skilled medical personnel, and (AR at AA-000214-15.)  therefore, no benefits would be available.  (AR at AA-000215.)   During the course of their conversation, Dr. Schultes was unable to provide documentation that skilled services were required.  (AR at AA-000214-15.)  Ultimately, on or about December 9, 2008, UHIC denied Plaintiffs' claim for overnight in-home nursing coverage.  (AR at AA-000220.)

On December 9, 2008, Plaintiffs appealed their denial of benefits.  (AR at AA-000229-30.)  UHIC assigned Dr. Brian H. Rose to the appeal.  (AR at AA-000112.)  On December 18, 2008, Dr. Rose spoke to a Bayada representative who explained to him that the person providing care to R.J. was not a registered nurse[6] and that R.J.'s father provided the same services as the home care specialist when he was available during the day.  (AR at AA-000112.)  Based on the information provided, Dr. Rose determined that R.J. did not receive skilled care from his private duty nurse.  (AR at AA-000223–224.)  Since the care was deemed custodial, he found that the

---

[6] Dr. Rose later determined that there were multiple home care specialists, some of which included nurses. However, he found that the care provided was not meant to treat an illness or injury, but to provide maintenance and care for assistance with "activities of daily living" (ADL).  Since the same assistance could be provided by a trained layperson, such as Mr. Marsella, the coverage was deemed to be excluded from the Plan.  (AR at AA-000139.)

requested services were excluded from benefit coverage.  (*Id.*)  As a result, on or about

December 19, 2008, UHIC denied Plaintiffs' appeal.[7]

On January 26, 2009, Mr. Marsella, wrote a letter stating that he was appealing the

December 19th denial.  (AR at AA-000087-89.)  On February 12, 2009, UHIC recommended

that Plaintiffs seek out a second-level appeal with the PBAC.  The appeal was submitted on

February 23, 2009.  (AR at AA-000102-104, 85-86.)  The PBAC wrote to an independent

medical consulting firm, Elite Physicians, Ltd., requesting that they provide an assessment of

whether the care at issue was skilled nursing that was medically necessary for diagnosis or

treatment of an illness or injury, and whether it was custodial care (AR at AA-000245-249.)  Dr.

Jose Perez of Elite Physicians reviewed the file and provided a report on April 9, 2009.  (AR at

AA-000013, 240-242.)  In his report, Dr. Perez found that R.J.'s medical condition is chronic

and does not require skilled nursing care.  (AR at AA-000240-242.)  Following this report, on

August 23, 2009, the PBAC upheld the denial of coverage.  (AR at AA-000008-14.)

## III.    DISCUSSION

### a.    **Motion for Summary Judgment**

#### i.    *Legal Standard*

##### 1.    *Summary Judgment*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant,

---

[7] The denial letter explained:

> The appeal was reviewed by Dr. Brian Rose, M.D.  The decision was made based on notes, benefit documents and clinical information.  Per Dr. Rose "Based on the information provided, the individual does not receive skilled care from the private duty nurse.  The benefit document excludes custodial care services.  Therefore, the requested services are not a covered benefit."

(AR at AA-000223-224.)

and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).  The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact.  Anderson, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521 (1991).  The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

### 2.  Denial of Benefits under an ERISA Qualified Plan

Denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where the language of the plan grants the administrator or

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, courts should apply an abuse of discretion or arbitrary and capricious standard of review.[8]  "Under a traditional arbitrary and capricious review, a court can overturn [a] decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Doroshow v. Hartford Live and Acc. Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009).  The scope of an "arbitrary and capricious" review is narrow; "[a] court is not free to substitute its own judgment for that of the administrator in determining eligibility for plan benefits."  *Id.*

Although Plaintiffs argue that this Court should apply the *de novo* standard of review, the policy language gives a clear indication regarding UHIC's discretionary authority to determine eligibility of benefits.  The policy states in relevant part:

> The Pension Benefits Administration Committee (PBAC), under the authority granted to it by the Board of Directors through the Chairman, has the sole authority to interpret, construe, determine claims and adopt and/or amend employee benefit plans ("Plans").  . . . The Employer hereby grants the PBAC the authority to administer and interpret the terms and conditions of the Plans and the applicable legal requirements related thereto . . . .

(AR at AA-000537.)  It is evident from the policy language that UHIC has complete discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Accordingly, the standard to be applied is the arbitrary and capricious standard of review.

The gravamen of the parties' dispute is whether the coverage requested requires skilled nursing care, which would be covered by the Plan, or whether the services needed are custodial in nature, which would not be covered by the Plan.  Defendants argue that summary judgment is appropriate in this case because the denial of R.J.'s ERISA benefits was not arbitrary and

---

[8] With respect to examining a denial of benefits under an ERISA plan, the abuse of discretion standard is identical to the arbitrary and capricious standard.  *See Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 526 n.2 (3d Cir. 2009), *cert. denied*, 131 S. Ct. 1048 (2011) (citing *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 45 n.4 (3d Cir. 1993)).

capricious.  Plaintiffs oppose summary judgment by arguing that the denial of ERISA benefits was arbitrary and capricious because the Plan harbors a conflict of interest as the Plan's benefits are paid through a trust funded by American Airlines, the Plan's settlor.  Plaintiffs also argue that the medical reports in the administrative record are inadmissible under the Federal Rules of Evidence.  Alternatively, Plaintiffs argue that if the medical reports are admissible, they should not be given significant weight.

### a.  Characterization of Care

The language of the policy excludes, among other things, in-home custodial care, which is defined as "care that assists the person in the normal activities of daily living and does not provide any therapeutic value in the treatment of an illness or injury."  (AR at AA-000564.)  The policy also excludes coverage for certain nursing care, defined as "care, treatment and services, or supplies received from a nurse that do not require the skill and training of a nurse; private duty care that is not medically necessary, or if medical records establish that such care is within the scope of care normally furnished by hospital floor nurses; certified nurses aides."  (AR at AA-000425.)  The policy defines medically necessary as

> a medical . . . service . . . required for the diagnosis or treatment of an non-occupational, accidental injury, illness or pregnancy.  The benefit or plan determines medical necessity based on and consistent with standards approved by the claim processor's medical personnel.  To be medically necessary, a service, supply or hospital confinement must meet all of the following criteria:
> - ordered by a physician (although the physician's order alone does not make a service medically necessary)
> - appropriate (commonly and customarily recognized throughout the physician's profession) and required for the treatment and diagnosis of the illness, injury or pregnancy;
> - unavailable in a less intensive or more appropriate place of service, diagnosis or treatment that could have been used instead of the service, supply or treatment given.

(AR at AA-000568.)  The Administrative Record demonstrates that Bayada did not always assign registered nurses to care for R.J.  (AR at AA-000158-204.)  Also, the Administrative Record demonstrates that at times Mr. Marsella performed all the tasks at issue for R.J.  (AR at AA-000139.)  Considering only the circumstances of R.J.'s ordinary care, the fact that Bayada did not always assign registered nurses to care for R.J., and the fact that Mr. Marsella also performed the same tasks as the Bayada nurses, demonstrate that the care provided to R.J. does not require a medical professional and is not medically necessary.  Furthermore, Dr. Samuel Wilmit, M.D., Dr. Brian H. Rose, M.D., and Dr. Jose Perez, were all assigned to review R.J.'s denial of benefits and all agreed that R.J.'s condition does not require skilled medical care.

### b.  Conflict of Interest

Plaintiffs argue that UHIC's denial of benefits to R.J. was arbitrary and capricious because the Plan harbors a conflict of interest as the Plan is both the ultimate adjudicator of benefits and the payor.  Plaintiffs also argue that the conflict of interest requires this Court to apply an abuse of discretion standard of review as opposed to an arbitrary and capricious standard.[9]  While it is true that the Supreme Court has found that a conflict of interest exists where the adjudicator of benefits is also the payor of benefits, the Court made it clear that the existence of the conflict does not automatically trigger a change in the standard of review. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112-116 (2008).  Rather, the Court stated that a conflict of interest is a factor to be considered when determining the validity of a denial of ERISA benefits.  *See id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)).  A conflict of interest will prove to be important "where circumstances suggest a higher likelihood that it affected the benefits decision." *Id.* at 117.  A conflict of interest will be less important

---

[9] As it has already been established that the two standards are identical, *see supra* note 8, this Court understands Plaintiffs' argument to simply be seeking a heightened standard of review.

where the administrator has taken active steps to reduce potential bias and to promote accuracy." *Id.*

Here, Plaintiffs do not proffer any arguments or evidence to show how the conflict of interest caused UHIC's denial of benefits to be arbitrary and capricious. Also, Plaintiffs do not illustrate that there was a high likelihood that the conflict of interest affected R.J.'s denial of benefits. Dr. Perez's evaluation of eligibility was important in two respects. First, the Administrative Record (Defs.' Br. Ex. A.) demonstrates that the final appeal was conducted by Dr. Perez, a doctor from an independent consulting firm. (AR at AA-000245-249.) He was not employed by UHIC and his compensation was not contingent upon his determination of eligibility.[10] (*Id.*) Therefore, the final independent determination refutes the implication that the denial of R.J.'s coverage was in large part likely due to a conflict of interest. Second, even though the facts in this case demonstrate a conflict of interest, *Glenn*, 554 U.S. at 112-115, such a conflict has been mitigated in this instance. While it is unclear whether the first two non-treating physicians that evaluated R.J.'s eligibility for coverage were independent, it is significant that Dr. Perez's determination did not rely upon those prior determinations of ineligibility. (AR at AA-000240.) According to the documents he listed under "Records Provided for Review," Dr. Perez was not provided with records of Drs. Wilmit and Rose's evaluations. (*Id.*) As such, his evaluation was not tainted by the conflict of interest. Under *Glenn*, the importance of the conflict of interest "factor" is lessened, "(perhaps to the vanishing point)[,] where the administrator has taken active steps to reduce potential bias and to promote

---

[10] In his assessment, dated April 6, 2009, Dr. Perez stated:

> I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. I attest that my compensation is not dependent on the specific outcome of my review.

(AR at AA-000240-242.)

accuracy." *Glenn*, 554 U.S. at 117. Here, since the conflict was mitigated and therefore did not affect Dr. Perez's evaluation, the Defendants' ultimate finding that coverage was excluded does warrant a heightened standard of review.

### c. Hearsay

Plaintiffs also argue that the statement of the doctors who were assigned by UHIC to evaluate R.J.'s request for professional medical care are impermissible hearsay and hearsay-within-hearsay. Plaintiffs' contention is based on the fact that the evaluating doctors never examined R.J. in person.

"It is well-established that 'generally, only evidence in the administrative record is admissible for the purpose of determining whether the plan administrator's decision was arbitrary and capricious.'" *Nally v. Life Ins. Co. of North America*, 299 F. App'x 125, 130 (3d Cir. 2008) (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007), *overruled on other grounds by Estate of Kevin Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009)). "Under the arbitrary and capricious standard of review, the [administrative] record consists of that evidence that was before the administrator when he made the decision being reviewed." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997), *abrogated on other grounds as stated in Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 847 (3d Cir. 2011). Plaintiffs have not presented any legal support for the argument that the medical reports in the administrative record constitute hearsay and consequently cannot be considered by this Court.

Alternatively, Plaintiffs argue that no weight should be given to the report of the independent medical examiner Dr. Jose Perez and those of Drs. Wilmit and Rose. Plaintiffs submit that the reports are bare and conclusory and serve only to counter the conclusions of the R.J.'s examining physicians. Plaintiffs also argue that the reports have no underlying

methodology, are not based upon a personal examination of R.J. and are therefore unreliable. Plaintiffs' argument seems to implicate the "treating physician rule" which states that "the opinions of treating physicians are to be given substantial, and sometimes controlling weight." *Edgerton v. CNA Ins. Co.*, 215 F.Supp.2d 541 (E.D. Pa. 2002) (citing *Skretvedt v. E.I. DuPont de Nemours & Co.*, 268 F.3d 167, 184 (3d Cir. 2001) ("We have long recognized that in the analogous area of disability benefits determinations under the Social Security Act, the 'opinions of a claimant's treating physician[s] are entitled to substantial and at times even controlling weight.'")). The rationale behind the treating physician rule is that a patient's treating physician is better suited to make determinations of disability based on a "detailed, longitudinal picture of [the claimant's] medical impairment(s)." *Edgerton v. CNA Ins. Co.*, 215 F. Supp. 2d 541, 549 (E.D. Pa. 2002) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001)) (analogizing the reasoning behind the treating physician rule as it relates to disability determinations under the Social Security Act, which is codified in 20 C.F.R. § 404.1527(d)(2), to determinations of disability under an ERISA plan). To the extent that plaintiffs rely on the treating physician rule, this Court finds that the issue here is not whether the R.J. has a disability, which is undisputed, but rather the category of the benefits to which he is entitled.

     b.  **Motion for Leave to File a Rebuttal Memorandum**

Plaintiffs moved for leave to file a rebuttal memorandum on the bases that (1) Defendants incorrectly deemed Plaintiffs' responses to Defendants' Statement of Material Facts as admissions by Plaintiffs, and (2) that *Viera v. Life Insurance Co. of North America*, 642 F.3d 407 (3d Cir. 2011) is relevant for purposes of this Court's adjudication of this case. Plaintiffs contend that they will be prejudiced if they are not granted leave to file their rebuttal memorandum. Plaintiffs' first reason for seeking leave to file a rebuttal memorandum fails

because Plaintiffs had ample opportunity to properly dispute the Statement of Material Facts in question, but failed to do so.[11]  Plaintiffs' second reason also fails because Plaintiffs will not be prejudiced as a result of not filing a rebuttal memorandum regarding *Viera*.

## VI.   CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Leave to File a Rebuttal Memorandum is **DENIED**.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties

---

[11] Local Civil Rule 56.1(a) of the New Jersey Federal Practice Rules states in part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

L. Civ. R. 56.1(a).  Since Plaintiffs failed to provide a responsive statement of material facts in the format required by the Local Civil Rules, any material fact not properly disputed by Plaintiffs is deemed undisputed for purposes of this Motion.  *See Parker v. Pressler & Pressler*, 650 F. Supp. 2d 326, 330 n.3 (D.N.J. 2009); *Stouch v. Twp. of Irvington*, 2008 U.S. Dist. LEXIS 54055 (D.N.J. July 16, 2008), *aff'd*, 354 F. App'x 660 (3d Cir. 2009).